Hall v. French.

HALL, Appellant, v. FRENCH.

In Banc, December 3, 1901.

1. **Deed "To Her and Her Bodily Heirs:"** LIFE ESTATE: REMAINDER: CURTESY: POSSESSION: SALE BY SHERIFF. A deed to a married woman and her bodily heirs made in 1844, vested in her an estate for her natural life, and upon her death the remainder passed to her bodily heirs in fee. The husband was entitled to the possession of the wife's life estate, by virtue of his marital relation with the life tenant (and not by right of any estate in curtesy, during her life), and the remaindermen were not entitled to the possession so long as the husband's marital right thereto continued. So that a sheriff's execution sale in pursuance to a judgment against the husband, then in possession, conveyed only the husband's marital right of possession in his wife's life estate, and the purchaser thereat could not be ousted until her death, but then all his right to the possession ceased, and her bodily heirs could within ten years thereafter maintain ejectment. Nor is the suit of such remaindermen barred by the thirty-year statute of limitations, nor does that statute have any application to their suit.

2. ——: ——: ——: STATUTE OF LIMITATIONS. The thirty-year statute of limitations (sec. 4268, R. S. 1899, providing that where a person is entitled to the possession of land and does not assert in court his claim within thirty years after his cause of action accrued and does not pay taxes on the land during that time, his claim is barred as against a person who has been in possession and paid taxes for that length of time) does not bar the remaindermen within ten years after a life estate terminates from recovering the possession from him who claims as purchaser of the life estate, for during the continuance of the life estate his cause of action did not accrue.

3. **When Remainderman May Sue:** LIMITATIONS. The remainderman can not come into court to recover possession of the land before the life estate has terminated, and consequently neither the thirty-year statute. nor any other statute, begins to run against him until the life estate is lifted.

Appeal from Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

REVERSED AND REMANDED *(with directions).*

*Hall & Hall* for appellant.

(1)   The deed from Richard and wife to Ann P. Henderson vested in her an estate which the common law formerly denominated a conditional fee, which became absolute if the grantee or donee had bodily heirs.   2 Blackstone, 110, 111; Tiedeman on Real Property, sec. 45.   By the Statute of Westminster the Second, called "De Donis Conditionalibus," this fee conditional was converted into an estate tail.   2 Blackstone, 112; Tiedeman on Real Property, secs. 46, 47.   According to the statutes of Missouri, in force at the time said deed was made, Ann P. Henderson became seized of said real estate for her natural life and at her death the remainder passed to her children, plaintiff's grantors, in fee simple absolute.   R. S. 1825, p. 216, sec. 4; R. S. 1835, p. 119, sec. 5; Burris v. Page, 12 Mo. 358; Despain v. Carter, 21 Mo. 331; Muldrow v. White, 67 Mo. 470; Phillips v. LaForge, 89 Mo. 72; Wood v. Kice, 103 Mo. 229; Emerson v. Hughes, 110 Mo. 627; Bone v. Tyrrell, 113 Mo. 175, 182; Reed v. Lane, 122 Mo. 311; Clarkson v. Clarkson, 125 Mo. 381; Brown v. Rogers, 125 Mo. 392; Hunter v. Patterson, 142 Mo. 310; Rozier v. Graham, 146 Mo. 352; 1 Tiedeman on Real Property (1 Ed.), sec. 47. (2)   The husband had an interest in the wife's life estate in the land, which could be levied upon and sold for his debts and which passed to Robert Benson by the sheriff's deed. Mueller v. Kaessman, 84 Mo. 324; Dyer v. Wittler, 89 Mo. 93; Conrad v. Howard, 89 Mo. 223; Godman v. Simmons, 113 Mo. 130; 15 Am. and Eng. Ency. of Law, 817, 818, and note; 2 Kent's Com. (11 Ed.), pp. 112, 113 and 115; R. S. 1835, p. 252, secs. 17, 45 and 59.   (3)   The sheriff's deed to Benson only conveyed the husband's interest in his wife's life estate, and the possession of the parties claiming under this deed was not adverse to the children of Ann P. Henderson while she lived, and limitation did not begin to run until her death. Salmon's Admr. v. Davis, 29 Mo. 181; Dyer v. Brannock, 66

Mo. 391; McCracken v. McCracken, 67 Mo. 592; Sutton v. Casseleggi, 77 Mo. 405; Keith v. Keith, 80 Mo. 129; Mueller v. Kaessman, 84 Mo. 324; Dyer v. Wittler, 89 Mo. 93; Bradley v. Railroad, 91 Mo. 498; Thomas v. Black, 113 Mo. 70; Fischer v. Siekmann, 125 Mo. 178; Melton v. Fitch, 125 Mo. 290; Northcutt v. Eager, 132 Mo. 265; Howell v. Jump, 140 Mo. 456; Tiedeman on Real Property (1 Ed.), secs. 64, 65, and 400; 1 Am. and Eng. Ency. of Law (2 Ed.), 807, 808. (4)   As defendant and those under whom he claims acquired the life estate of Ann P. Henderson in the lands, they were bound to pay the taxes and keep up the repairs.   Reyburn v. Wallace, 93 Mo. 326; Bone v. Tyrrell, 123 Mo. 175, 188; Childers v. Schants, 120 Mo. 314; Pike v. Wassell, 94 U. S. 715; 2 Desty on Taxation (1 Ed.), pp. 695, 696; Tiedeman on Real Property (1 Ed.), sec. 68.   (5)   The one-year statute of limitation (sec. 4268, R. S. 1899) does not apply to the facts in this case, and the trial court erred in refusing to give instructions numbered 3, 4, and 5, asked by plaintiff, and in giving instruction numbered 1, asked by defendant. Fairbanks v. Long, 91 Mo. 635; Charles v. Morrow, 99 Mo. 646; Pharis v. Bayles, 122 Mo. 124; Brown v. Rogers, 125 Mo. 400; Shumate v. Snyder, 140 Mo. 77; Howell v. Jump, 140 Mo. 457; Collins v. Pease, 146 Mo. 135.

*Harber & Knight* and *Samuel Hill* for respondent.

(1)   Estates tail were abolished by statute long ago, and reversions and remainders by which estates are postponed to a succeeding generation, while permitted by our laws, are looked upon with disfavor.   Godman v. Simmons, 113 Mo. 130; Jones, Law of Real Property, sec. 734.   Hence, the Legislature, in 1874, passed what is now section 4268, Revised Statutes 1899, and what was numbered in the Revision of 1889 as section 6770, by which a one-year statute of limitations was enacted applicable to all persons answering to a certain descrip-

tion: i. e., all persons becoming entitled to bring an action on a certain date (the equitable title theretofore having emanated from the Government more than ten years) and who have been out of possession for thirty years before such date and have paid no taxes for that length of time, and another in possession at such date, must then bring an action within one year or they are forever barred. (2) This statute was not enacted as a revenue measure, but as a statute of repose, that when remainders were carried over for thirty years, then so soon as thereafter on any day they might or could bring their action against another in possession they would be held to greater vigilance and be required to so bring their action within a year instead of ten. That is, when certain conditions exist, descriptive merely of the persons to whom they are made applicable, then the statute of limitations, as to all so situated, is one year instead of ten. Collins v. Pease, 146 Mo. 135. (3) The contention "that the claimant's right of action must exist at all times for the full period of thirty years" is refuted by the very language and terms of the statute. Sec. 4268, R. S. 1899. Such contention requires the writing in of exceptions and limitations which is not permissible. Collins v. Pease, supra. (4) There is no element of adverse holding during the thirty years in this statute, and, hence, the familiar doctrine of Fischer v. Seikmann, 125 Mo. 165, and Philips v. La Forge, 89 Mo. 72, and kindred cases cited by appellant, that the possession of the tenant for life is not adverse to that of the remainderman, does not apply in this case. After the expiration of the thirty years and during the one-year period, after the life estate has fallen in, the possession becomes adverse. 1 Am. and Eng. Ency. Law (2 Ed.), 809. (5) This statute is constitutional. 13 Am. and Eng. Ency. of Law (1 Ed.), p. 695, and authorities cited.

Vol 165 mo—28

MARSHALL, J.—The parties have agreed that the following statement, made by appellant's counsel, is correct, and it is therefore adopted:

"This is an action in ejectment for the recovery of the northeast quarter of the northwest quarter of section 14, township 61, range 24, in Grundy county, Missouri.

"On August 10, 1840, the land in suit, together with other lands, was entered from the Government by George Richard. On February 12, 1844, the said George Richard and his wife, by warranty deed, sold and conveyed to Ann P. Henderson, 'the said party of the second part and to her bodily heirs and assigns forever,' the land here sued for, 'to have and to hold the said tract or parcel of land with all the appurtenances thereunto belonging or anywise pertaining to the only proper use, benefit and behoof of the said party of the second part and her bodily heirs and assigns forever.'

"On October 19, 1852, William C. Harvey, as sheriff of Grundy county, Missouri, levied upon and sold all the right, title and interest and claim, estate and property of Henry M. Henderson, the husband of Ann P. Henderson, in and to the land here sued for, under an execution issued on a judgment rendered in the circuit court of Grundy county, Missouri, on October 22, 1851, against Henry M. Henderson and Ira Benson. At said sale Robert H. Benson became the purchaser and received a sheriff's deed dated October 20, 1852. The defendant claims title through successive conveyances from said Benson.

"Ann P. Henderson and Henry M. Henderson were married about the year 1838. They were in possession of the land in suit prior to October 20, 1852, the date of the sheriff's deed, and after that time, in 1852 or 1853, they moved to the state of California and never returned to this State. They continued to live together as husband and wife until the death of Mrs. Henderson. She died intestate on August 16, 1891, in Lake county, Oregon, and her husband, Henry M. Henderson,

died intestate, on December 13, 1895, in Mountain View, Santa Clara county, California. There were nine children born of their marriage, six of whom survived their parents and are plaintiff's grantors in the conveyance under which he claims title to the land in suit. These six are the only children and sole heirs of said Ann P. Henderson and Henry M. Henderson. They are William H. Henderson, aged about 55 years; Victor T. Henderson, aged about 49 years; Melvina J. Gruelle, wife of W. C. Gruelle, aged 46 years; Vincent S. Henderson, aged 43 years; Edward P. Henderson, aged 40 years; and Levin J. Henderson, aged 34 years.

"On July 8, 1896, V. S. Henderson, in his own behalf and as attorney in fact for the other heirs of Ann P. Henderson, powers of attorney to him having been executed by them, executed a quitclaim deed to plaintiff of the lands in suit. The petition in this case was filed July 27, 1896, and summons was served on the same day. The answer was filed October 5, 1896. It was afterwards discovered that the acknowledgment of the deed from the Henderson heirs to plaintiff did not conform strictly to the Missouri form of acknowledgment and on November 30, 1896, the said V. S. Henderson, for himself and the other heirs, executed and delivered to plaintiff another deed to the same lands. This last deed was the one read in evidence. On January 8, 1897, both the petition and answer were refiled, as the pleadings themselves and the records of the court show, and the case was tried on May 1, 1897. It was agreed between the parties, on the trial of the case, that if plaintiff was entitled to recover at all he was entitled to recover rents and profits at the rate of seventy-five dollars a year from the first day of December, 1896; that the defendant was in the possession of the premises at the institution of the suit and the time of the trial; that the plaintiff and those under whom he claims had not been in the actual possession of the land or paid any taxes thereon since October 20, 1852; that defendant and those under whom he claims as grantors, have been in pos-

session of and claiming title to said land and have paid the taxes thereon since October 20, 1852; and that Ann P. Henderson and Henry M. Henderson, her husband, were in possession of said land prior to October 20, 1852."

The case was tried by the court, without a jury, and the plaintiffs asked and the court refused to give the following instructions:

"1.  The patent from the United States to George Richard as shown by the platbook of original entries of Grundy county, Missouri, and the warranty deed from George Richard and wife to Ann P. Henderson, read in evidence, were sufficient in law to vest, and did vest, the title to the land in controversy, in fee, in Ann P. Henderson.

"2.  If the court, as the trier of the facts, believes and finds from the evidence that said Ann P. Henderson was the wife of Henry M. Henderson and that there were born alive of the marriage of said Henry M. Henderson and Ann P. Henderson children and issue, then by reason of said marriage and said issue, the said Henry M. Henderson became invested with a life estate in said lands, which was subject to seizure and sale under execution for the debts of the said Henry M. Henderson, and the purchaser and those claiming under and through him, were entitled to the possession of said land during the life of said Henry M. Henderson, and at his death, the said Ann P. Henderson, if living, and if dead, then the children and heirs at law of the said Ann P. Henderson and those claiming under and through them, were and are entitled to the possession of said land.

"3.  If the court believes and finds from the evidence in this case that the said Henry M. Henderson died on the thirteenth day of December, 1895, and that said Ann P. Henderson died on the sixteenth day of August, 1891, leaving as her heirs, her children, born of said marriage with said Henry M. Henderson, V. S. Henderson, E. P. Henderson, V. T. Henderson, W. H. Henderson, L. J. Henderson and Melvina J.

Gruelle, surviving her, and that the children and heirs, in their own behalf in part, and by their duly authorized attorney in part, as shown by the letters of attorney, executed the deed to plaintiff, read in evidence, then the court must find for plaintiff.

"4.   Under the pleadings and the evidence in this case, the finding of the court must be for the plaintiff, for the possession of the lands sued for.

"5.   If the court finds for plaintiff, it will find for him for the possession of the lands described in his petition, and for damages for all waste and injuries thereto, and by way of damages the rents and profits of said land from the first day of December, 1896, down to the present time, and will also find for him for the monthly value of the rents and profits of said premises."

Defendant asked and the court gave the following instruction:

"1.   Under the deed read in evidence from 'George Richard and wife to Ann P. Henderson and to her bodily heirs and assigns,' the said Ann P. took a life estate only in said premises, and this suit not having been instituted for one year and longer after the death of the said Ann P., and it being admitted that neither the plaintiff nor those under whom he claims has been in actual possession of the lands in suit or paid any taxes thereon for more than thirty years prior to the death of the said Ann P., the finding must be for defendant."

The court entered judgment for the defendant and the plaintiff appealed.

## I.

The deed from George Richard to Ann P. Henderson "and to her bodily heirs" vested in her, under the law of this State as it was in 1844 when the deed was made, an estate for her natural life, and upon her death the remainder passed to

her bodily heirs in fee.    [R. S. 1825, p. 216, sec. 4; R. S. 1835, p. 119, sec. 5; Burris v. Page, 12 Mo. 358; Phillips v. LaForge, 89 Mo. 72; Emmerson v. Hughes, 110 Mo. 627; Bone v. Tyrrell, 113 Mo. 175; Clarkson v. Clarkson, 125 Mo. 381; Rozier v. Graham, 146 Mo. 352.]

Immediately upon the life estate vesting in the first taker, Ann P. Henderson, her husband, Henry M. Henderson, by force and virtue of his marital relation (and not in right of any estate by the curtesy) became entitled to the possession of the property so long as his wife lived, if he lived that long and if the marital relation so long continued.    The wife was not entitled to the possession so long as the husband's marital right to the possession continued.    [Dyer v. Wittler, 89 Mo. 1. c. 96; Shumate v. Snyder, 140 Mo. 77.]    The remaindermen were not entitled to possession until the termination of the life estate.    [Rozier v. Graham, 146 Mo. 353; Howell v. Jump, 140 Mo. 1. c. 456.]    In one sense the remaindermen are in possession *ab initio,* that is, the possession of the life tenant is the possession of the remaindermen also.    [Sutton v. Casscleggi, 77 Mo. 405; Thomas v. Black, 113 Mo. 66.]    But this is so only as to third persons.    As between the life tenant and the remaindermen the remaindermen have no right to the possession and could maintain no action against the life tenant or his grantees or assigns of that particular estate, until the termination of the life estate.    The life tenant or those in possession under him are obliged to pay the taxes.    The remaindermen are not obliged to do so except to protect their remainder if the life tenant fails to pay them. [Howell v. Jump, 140 Mo. 441.]

The husband of the life tenant, in his marital relation, therefore, being entitled to the possession so long as the wife lived—the husband being still alive and husband—the sale by the sheriff, under the judgment against the husband, to Benson, conveyed only the husband's marital right of possession of his wife's life estate.    This is all Benson bought or paid for and this is all the defendant acquired from Benson.    Benson

and the defendant have therefore enjoyed the whole estate they acquired, for they have, between them, been in possession of all they bought from October 20, 1852, the date of the sheriff's sale under which Benson went into possession, until August 16, 1891. They have had the possession and enjoyment of the property, and now they claim the whole estate against the remaindermen.

Because Benson and the defendant were in possession by virtue of having acquired the husband's marital right to the possession during the continuance of the life estate and the coverture, the remaindermen had no right to maintain an action for the possession, and having no right to possession until the termination of the particular estate, the statute of limitations did not begin to run against them until their cause of action accrued upon the termination of the particular estate. [Salmons' Admr's v. Davis, 29 Mo. l. c. 181; Brown v. Moore, 74 Mo. 634.] The life tenant (and his assign or grantee) does not hold adversely to the remaindermen, but in right of his particular estate, and therefore the statute of limitations does not run in favor of the life tenant as against the remaindermen. [Keith v. Keith, 80 Mo. l. c. 127; Thomas v. Black, 113 Mo. l. c. 70, and cases cited.]

The defendant had all the rights that Benson acquired at the sheriff's sale. Benson acquired the right to the possession that Henry M. Henderson had, as husband, in his wife's life estate. Until the wife died, therefore, the defendant could not be ousted of possession by the remaindermen—for their right of action did not accrue until then. The marital relation continued until the wife's death in 1891, and the husband was living then. When the wife died the particular estate terminated, and the marital relation ceased, and, therefore, the husband's right to the possession ceased, and when that ceased all the rights of Benson and his assign, the defendant, ceased. Then for the first time a right of action to recover possession accrued to the remaindermen. This was on August 16, 1891.

This suit was begun on the twenty-seventh of July, 1896. The remaindermen being then *sui juris,* had ten years after August 16, 1891, in which to sue before being barred by limitation. [R. S. 1899, sec. 4262.] The action, therefore, was begun in proper time and is not barred by limitation.

## II.

But defendant claims that under section 4268, Revised Statutes 1899, the action is barred by limitation. That section is as follows:

"Whenever any real estate, the equitable title to which shall have emanated from the government more than ten years, shall thereafter, on any date, be in the lawful possession of any person and which shall or might be claimed by another, and which shall not at such date have been in possession of the said person claiming or who might claim the same, or of any one under whom he claims or might claim, for thirty consecutive years, and on which neither the said person claiming or who might claim the same nor those under whom he claims or might claim has paid any taxes for all that period of time, the said person claiming or who might claim such real estate shall, within one year from said date, bring his action to recover the same, and in default thereof he shall be forever barred, and his right and title shall, *ipso facto,* vest in such possessor. Provided, however, that in all cases such action may be brought at any time within one year from the date at which this article takes effect and goes into force."

The particular contention of the defendant is that the title emanated from the Government of the United States in 1840; that he and those under whom he claims have been in possession since 1852, and have paid taxes on the land all that time; that their entry was lawful and not merely as intruders or trespassers; that the plaintiff and those under whom he claims have not been in possession at any time within thirty years

before the suit was instituted; that the suit was not begun within one year after Mrs. Henderson's death, and that the statute (sec. 4268) has been construed by this court in Fairbanks v. Long, 91 Mo. 628, and in Collins v. Pease, 146 Mo. 135, to be a statute of repose, which under the circumstances stated above, not only bars the plaintiff's action, but also vests the title in the defendant.

This contention is a misconception of the statute and of the cases cited. In neither of the cases relied on by the defendant were the conditions the same as are presented by the record in this case. In neither of those cases was there any preceding particular estate, nor were the plaintiffs remaindermen whose rights to possession was postponed until the termination of the particular estate. But on the contrary, both parties claimed the fee under a common source of title. In the Fairbanks case the plaintiff claimed through the heirs of the patentee from the Government, and the defendant claimed under a deed from the patentee to the defendant's grantor. The fee was in the patentee, and there was no lesser, precedent, particular estate grafted on to the fee. The plaintiff sought to tack the disability of infancy to the thirty years limited by that section of the statute, and this court properly held that there was no saving clause under section 4268, like there is to section 4262 contained in section 4265. In Collins v. Pease, the plaintiffs claimed as the heirs of Solomon Collins, who acquired the fee by a patent from the Government, and the defendant claimed as the grantee of Solomon Collins. The plaintiffs were married women and sought to tack the disability of coverture to the thirty-year statute, and it was again properly held that it could not be done.

The questions involved in this case were not present in those cases. Those cases must be read in the light of the facts presented for adjudication, and so read they have no application whatever to the case at bar, nor are they in conflict with Dyer v. Wittler, 89 Mo. 81; Howell v. Jump, 140 Mo. 441, and

Shumate v. Snyder, 140 Mo. 77, in which it was held that no statute of limitations can begin to run before a cause of action has accrued. No court has ever held that a right can be barred by limitation before the law permits the owner of the right to come into court, for such a decision would be a solecism, a denial of due process of law, for it would not give the party "a day in court." If a remainderman came into court before the life estate had terminated, he would be turned out of court because his cause of action had not accrued. If he did not come into court within thirty years from the time the life tenant, or tenant for years, or tenant by the curtesy went into possession of the qualified estate, he would be turned out of court because he came in too late, albeit, his right of action had not then accrued. No such construction has ever been or could ever be placed upon section 4268, Revised Statutes 1899, and if that section was intended to prescribe any such rule of conduct it would violate the Constitution of Missouri as well as the Constitution of the United States, for it would deprive a person of his property without due process of law—without giving him a day in court.

Section 4268, Revised Statutes 1899, has no application to the case at bar. This case falls within section 4262, and as this action was begun within ten years after the plaintiff's cause of action accrued, it is not barred by limitation. Section 4268, Revised Statutes 1899, properly construed, as it was, as to the facts involved, in Fairbanks v. Long, and in Collins v. Pease, supra, means that where a person is entitled to the possession of land, and does not assert in court his claim within thirty years after his cause of action accrued and does not pay taxes on the land during that time, his claim is barred as against a person who has been in possession and paid taxes for that length of time. The one year spoken of in the proviso to the section was allowed after the act went into effect, and as that time has long since passed the one-year limitation has ceased to have any effect or application. For these reasons the judg-

ment of the circuit court is reversed, and the cause is remanded to the circuit court with directions to enter judgment for the plaintiff for possession of the premises described in the petition, and to assess plaintiff's damages at a sum equal to $75 a year from December 1, 1896, and to assess the rents and profits at $75, a year, in accordance with the agreement of the parties to that effect in this case, and for costs. All concur, except *Burgess, C. J.,* who dissents.